IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DAVID WOOD, | § | |
| *Plaintiff*, | § | |
| | § | CIVIL ACTION NO. 1:24-CV-1058 |
| v. | § | *DEATH PENALTY CASE* |
| | § | |
| RACHEL L. PATTON, | § | |
| *Defendant*. | § | |

---

## DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION AND FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

---

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JOSH RENO
Deputy Attorney General
For Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

RACHEL L. PATTON
Assistant Attorney General
State Bar No. 24039030
*Counsel of Record*

P.O. Box 12548, Capitol Station
Austin, Texas 78711
Tel.: (512) 936-1400
Fax: (512) 320-8132
Email: *rachel.patton@oag.texas.gov*

*Counsel for Defendant*

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................... i

TABLE OF AUTHORITIES ............................................................ iii

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR
LACK OF SUBJECT MATTER JURISDICTION AND FOR FAILURE
TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.... 1

STATEMENT OF THE CASE .......................................................... 2

I.    Facts of the Crime ................................................................. 2

II.   Trial, Direct Appeal, and Postconviction Proceedings .................. 5

SUMMARY OF THE ARGUMENT .................................................. 12

ARGUMENT ............................................................................... 12

I.    The Standards of Review ......................................................... 12

      A.    Federal Rule of Civil Procedure 12(b)(1) ......................... 12

      B.    Federal Rule of Civil Procedure 12(b)(6) ......................... 13

II.   Plaintiff Lacks Standing to Bring Suit Against Defendants Because His
      Requests for Relief Are, in Fact, a Mandamus Request Beyond this
      Court's Jurisdiction. ............................................................... 15

III.  Plaintiff's Claims Should Be Dismissed for Lack of Subject Matter
      Jurisdiction. .......................................................................... 17

      A.    Defendant is entitled to Eleventh Amendment immunity to
            the extent Plaintiff seeks anything beyond declaratory and
            injunctive relief. .......................................................... 18

      B.    Plaintiff's DNA claims are barred by the *Rooker-Feldman*
            doctrine. ..................................................................... 19

IV.   Plaintiff's Amended Complaint Should Be Dismissed for Failure to
      State a Claim. ........................................................................ 23

      A.    Defendant Patton has absolute immunity from suit. .......... 24

      B.    Plaintiff's due process claims are barred by the doctrine of
            issue preclusion. .......................................................... 24

      C.    Plaintiff's DNA claims are patently meritless. .................. 25

D.    *Wood's Claims Are Meritless*.......................................................... 27

  *Illusory* ....................................................................................... 27

  *Novel* .......................................................................................... 32

CONCLUSION .............................................................................................. 38

CERTIFICATE OF SERVICE ...................................................................... 40

## TABLE OF AUTHORITIES

**Cases**                                                          **Page**

*Atkins v. Virginia,* 536 U.S. 304 (2002) ............................................................ 5

*Alvarez v. Attorney Gen. for Fla.*, 679 F.3d 1257 (11th Cir. 2012) ........... 21, 25

*Ambriati v. State*, 2015 WL 6998616 (Tex. App–Beaumont 2015) ................. 30

*Ams. for Prosperity Found. V. Bonta*, 594 U.S. 595 (2021) ............................ 37

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................ 14

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ......................... 13, 14, 32

*Burden v. Maness*, 2014 WL 4651609 (E.D. Tex. Sept. 17, 2014) .................. 38

*Carty v. Tex. Dep't of Pub. Safety*, 2006 WL 3332589 (E.D. Tex. 2006) .......... 19

*Cooper v. Ramos*, 704 F.3d 772 (9th Cir. 2012) ........................................ 21, 22

*Cory v. White*, 457 U.S. 85 (1982) ................................................................... 19

*Coury v. Prot*, 85 F.3d 244 (5th Cir. 1996) ....................................................... 13

*Cromartie v. Shealy*, 941 F.3d 1244 (11th Cir. 2019) ................................ 26, 34

*Cunningham v. Dist. Attorney's Office for Escambia County*,
    592 F.3d 1237 (11th Cir. 2010) .................................................................... 26

*Davis v. Lansing*, 851 F.2d 72 (2d Cir. 1988) ................................................... 17

*District Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52
    (2009) ..................................................................................*passim*

*District of Columbia Court of Appeals v. Feldman*, 460 U.S. 476 (1983) . 12, 19

*Edelman v. Jordan*, 415 U.S. 651 (1974) .......................................................... 18

*Esteves v. Brock*, 106 F.3d 674 (5th Cir. 1997) ................................................. 24

*Evans v. State*, 628 S.W.3d 358 (Tex. App–Ft. Worth 2021) ........................... 30

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005) ............ 20

*Gutierrez v. Saenz*, 565 F. Supp. 3d 892 (S.D. Brownsville Mar. 23, 2021) ... 28

*Harris v. Lykos*, 2013 WL 1223837 (5th Cir. 2013) ......................................... 14

*Harvey Specialty & Supply, Inc. v. Anson Flowline Equip. Inc.*, 434 F.3d 320 (5th Cir. 2005) ................................................................................................. 24

*Hicks v. Quaker Oats Co.*, 662 F.2d 1158 (5th Cir. 1981) ................................ 24

*Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006 (5th Cir. 1998) ................................................................................................. 13

*Howery v. Allstate Ins. Co.*, 243 F.3d 912 (5th Cir. 2001) ................................ 13

*In re Katrina Canal Breaches Litig*, 495 F.3d 191 (5th Cir. 2007) ..... 13, 14, 37

*In re Moore*, 1990 WL 165776 (4th Cir. Nov. 1, 1990) ..................................... 17

*In re Pruett*, 784 F.3d 287 (5th Cir. 2015) ....................................................... 23

*In re Robertson, Sr.*, 2021 WL 1312589 (Tex. App.—Austin 2021)................. 30

*In re Smith*, 349 F. App'x 12 (6th Cir. 2009) ................................................... 21

*Kentucky v. Graham*, 473 U.S. 159 (1985)........................................................ 18

*Leal v. State*, 303 S.W.3d 292 (Tex. Crim. App. 2009).................................... 34

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ........................................ 15

*Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464 (5th Cir. 2004)........................................................................................................ 13

*Martinez v. Tex. Dep't of Criminal Justice*, 300 F.3d 567 (5th Cir. 2002) ...... 19

*McKithen v. Brown*, 626 F.3d 143 (2d Cir. 2010) ....................................... 21, 26

*Medina v. California*, 505 U.S. 437 (1992) ....................................................... 25

*Moon v. City of El Paso*, 906 F.3d 352 (5th Cir. 2018).............................. 19, 24

*Moore v. Brown*, 295 F. App'x 176 (9th Cir. 2005) .......................................... 25

*Moore v. La. Bd. of Elementary and Secondary Educ.*, 743 F.3d 959 (5th Cir. 2014) ................................................................................................................. 18

*Mount v. Court of Criminal Appeals*, 2017 WL 6761860 (S.D. Tex. Nov. 20, 2017) .................................................................................................... 17

*Moye v. Clerk, Dekalb Cnty. Superior Court*, 474 F.2d 1275 (5th Cir. 1973) ............................................................................................................. 16, 17

*Norton v. Enns*, 2014 WL 3947158 (N.D. Tex. 2014) ...................................... 16

*Pennhurst State Sch. & Hosp. v. Haldeman*, 465 U.S. 89 (1984)................... 18

*Pruett v. Choate*, 2017 WL 4277206 (S.D. Tex. Sept. 25, 2017) ..................... 17

*Pruett v. State*, No. AP-77,065, 2017 WL 1245431 (Tex. Crim. App. Apr. 5, 2017) .................................................................................................... 29

*Pruett v. Choate*,
711 F. App'x 203 (5th Cir. 2017) ................................................................. 17

*Ramirez v. McCraw*,
715 F. App'x 347 (5th Cir. 2017) ......................................................... 17, 23

*Ramming v. United States*, 281 F.3d 158 (5th Cir. 2001) .............................. 13

*Reed v. Goertz*, 598 U.S. 230 (2023) ............................................................... 22

*Reed v. State*,
541 S.W.3d 759 ............................................................................................ 35

*Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923)........................................... 12

*Seminole Tribe v. Florida*, 517 U.S. 44 (1996) ............................................... 18

*Skinner v. State*, 665 S.W.3d 1 (Tex. Crim. App. 2022) .................................. 31

*Skinner v. Switzer*, 562 U.S. 521 (2011) ....................................... 20, 21, 22, 27

*State v. Long*, 2015 WL 2353017 (Tex. App.—Waco, May 14, 2015) ............. 29

*State v. Stephens*, -- S.W.3d --,2021 WL 5917198 (Tex. Crim. App. Dec. 15, 2021) .................................................................................................... 11

*Steph v. Scott*, 840 F.2d 267 (5th Cir. 1988).................................................... 20

*Stockman v. Fed. Election Comm'n*, 138 F.3d 144 (5th Cir. 1998)............ 12, 18

*Swearingen v. State.*, 303 S.W.3d 728 (Tex. Crim. App. 2010) ...................... 37

*United States v. Shepherd*, 23 F.3d 923 (5th Cir. 1994) ................................. 19

*Vogt v. Board of Comm'rs, Orleans Levee Dist.*, 294 F.3d 684 (5th Cir. 2002) 19

*Voluntary Purchasing Groups, Inc. v. Reilly*, 889 F.2d 1380 (5th Cir. 1989) . 13

*Wade v. Monroe County Dist. Att'y*, 2020 WL 639207 (3d Cir. Feb. 11, 2020) 21

*Warnoch v. Pecos*, 88 F.3d 341 (5th Cir. 1996).................................................. 18

*Whitmore v. Arkansas*, 495 U.S. 149 (1990) ..................................................... 15

*Wilson v. State*, No. 74,390, 2003 WL 1821465 (Tex. Crim. App. Mar. 26, 2003) ................................................................................................................ 29

5, 6

## Statutes

Tex. Code of Crim. Proc. art. 38.43 ................................................................... 31

Tex. Code of Crim. Proc. art. 64 .................................................................. 1, 12

Tex. Code of Crim. Proc. art. 64.01 and 64.03................................................. 29

Tex. Code of Crim. Proc. art. 64.03(a)(2)(B) ........................................ 25, 27, 30

Tex. Const. art. 5, § 5.......................................................................................... 19

U.S. Const. amend. XI ........................................................................................ 18

## Rules

Fed. R. Civ. P. 12(b)(1)............................................................................ 12, 13, 17

Fed. R. Civ. P. 12(b)(1), (6) ................................................................................. 1

Fed. R. Civ. P. 12(b)(6).................................................................................*passim*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DAVID WOOD, | § | |
| *Plaintiff*, | § | |
| | § | CIVIL ACTION NO. |
| v. | § | 1:24-CV-1085-DII |
| | § | |
| RACHEL L. PATTON, | § | *DEATH PENALTY CASE* |
| *Defendant*. | § | |

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION AND FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

Plaintiff David Wood is a Texas death row inmate who is currently scheduled to be executed after 6:00 p.m. (CDT) on March 13, 2025. Plaintiff has filed a civil-rights complaint asserting that the Texas Code of Criminal Procedure article 64 is unconstitutional facially and as-applied to him. *See generally* Compl. Plaintiff also seeks prospective injunctive relief in the form of an order prohibiting the Texas Department of Criminal Justice from enforcing the duly issued execution order. Compl., 23. Defendant respectfully moves to dismiss the complaint for lack of subject matter jurisdiction and for failing to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(1), (6).

1

## STATEMENT OF THE CASE

### I.    Facts of the Crime

Six women disappeared from the El Paso area between May 13, 1987 and August 27, 1987. Between September 4, 1987 and March 14, 1988, the bodies of these women were found buried in shallow graves in the same desert area northeast of El Paso....The first body discovered was that of Rosa Casio, age 23, who worked in a topless club. On the evening of her disappearance she was seen holding hands with a man who could have been [Wood]. The second body found was that of Karen Baker, age 21, who lived at a hotel on Dyer. The day of her disappearance, she was seen by Charles Lloyd riding a red Harley Davidson with [Wood]. She told Lloyd that [Wood] would be back to pick her up for a date at midnight. At midnight, Lloyd saw a man pull up in a white or beige pickup. The man got out and walked toward Karen, who was standing nearby. This was the last time Karen was seen. The third body recovered was that of Dawn Smith, age 14. This victim was well-acquainted with [Wood] and there was testimony that she would have accepted a ride with him. The fourth body was that of Desiree Wheatley, age 15. Desiree was last seen near a Circle K store, getting into the passenger side of a small beige truck driven by [Wood]. The fifth body was that of Angelica Frausto, age 17, who was a dancer at a topless bar. She was last seen going for a ride with a man on a red Harley-Davidson. The sixth body recovered was that of Ivy Williams, age 23, a prostitute and exotic dancer. She was seen with [Wood] shortly before her disappearance.

Five of the bodies were located in the same one by one-half mile area; the sixth was three-quarters of a mile away. All of the bodies were approximately 30 to 40 yards from one of the dirt roadways in the desert. Four of the bodies were in various states of undress, indicating that the killer had sexually abused them.

[Wood]'s former girlfriend and others testified that he owned a beige pickup. He also drove a red Harley-Davidson. [Wood]'s girlfriend testified that he had several tattoos on his body and that he owned both a burnt orange blanket and some shovels, all of which he kept in the back of his pickup. A forensic chemist testified that orange fibers found on the clothing of one of the victims matched orange fibers taken from a vacuum cleaner bag which [Wood] and his girlfriend had left in their old apartment.

Randy Wells testified that he shared a cell with [Wood] for two and a half months in 1989. [Wood] told him about the murders, describing his victims as topless dancers or prostitutes. [Wood] told him that he would lure each girl into his pickup with an offer of drugs. Then he would drive out to the desert, tie her to his truck and dig a grave. Next he would tie the victim to a tree and rape her. Wells also testified that he covered over some of [Wood]'s tattoos with new ones. He said [Wood] told him he wanted the tattoos covered up because one girl who had seen the tattoos had gotten away from him.

Both Karen Baker and Desiree Wheatley were with [Wood] when they were last seen alive. Ivy Williams was seen with [Wood] shortly before her disappearance. In the case of the victim Desiree Wheatley, a witness who knew [Wood] before the incident identified him as the man driving the pickup that Wheatley climbed into. All of the murders took place between May 30, 1987 and August 28, 1987.

*Wood v. State,* No. 71,594, slip op. at 3-5. The Court of Criminal Appeals also detailed in its opinion testimony given at the guilt phase of the trial regarding an extraneous offense committed by Petitioner:

The victim [Judith Kelly], a prostitute and a heroin addict testified that the following occurred in July of 1987:

3

Kelly was walking outside of a Circle K located on Kemp and Dyer in the northeast part of El Paso. A tattooed man driving a tan pickup stopped and asked her if she needed a ride. Kelly identified [Wood] in court as the driver of the pickup. She accepted his offer, climbed into his vehicle, and told [Wood] where she was going. When [Wood] passed up the turn she had directed him to take, he explained that he would take her back after first stopping by the house of a friend. He stopped at an apartment complex and went inside. When he returned about three minutes later, a piece of narrow rope was hanging from one of his pockets.

[Wood] drove northeast of town toward the desert, in the direction opposite Kelly's friend's apartment. He explained that he was going there to recover some cocaine he had buried in the desert. He stopped first at a gate in the desert area east of Dyer. Finding the gate locked, he crossed back west into the desert area located between Dyer and McCombs. After driving around the area for a good while, [Wood] finally stopped his truck, got out, and ordered Kelly out as well. She saw him get a "brownish red" blanket and a shovel from the back of his truck and take them behind some bushes. After tying her to the front of his truck with the rope, [Wood] proceeded to dig a hole behind the bushes. Ten or fifteen minutes later, he returned with the blanket and began ripping her clothes and forcing her to the ground. Suddenly hearing voices, [Wood] ordered Kelly to get back in the truck.

[Wood] drove across to the desert on the west side of McCombs, where he stopped his vehicle again. He ordered her out, spread the blanket on the ground and forced her to remover her clothes. He gagged her and tied her to a bush. While he had her on the ground attempting to rape her, he ordered her to say that she was 13; she refused to do so, saying she was 27 or 28

> years old. Ultimately, [Wood] did rape Kelly. Immediately afterwards, [Wood] stated that he heard voices. He hastily threw the blanket and Kelly's clothing into the back of his truck and drove away, leaving her naked in the desert. His final words to her were, "[A]lways remember, I'm free."

*Wood,* slip op. at 2-3.

*Wood v. Dretke*, No. 3:01-CV-2103-L, 2004 WL 1243169, *4–5 (N.D. Tex. Jun. 4, 2004).

## II.   Trial, Direct Appeal, and Postconviction Proceedings

David Wood was convicted and sentenced to death for the murder of six women in El Paso County, Texas in 1992. The Texas Court of Criminal Appeals (CCA) affirmed his conviction and sentence on direct appeal. *Wood v. State*, No. 71,594 (Tex. Crim. App. Dec. 13, 1995). Wood filed his first state application for writ of habeas corpus on December 19, 1997 and the CCA denied relief in 2001. *Ex Parte Wood*, No. 45,746-01 (Tex. Crim. App. Sept. 19, 2001).

Wood filed his initial federal petition for writ of habeas corpus on May 6, 2002. Later, on October 2, 2002, Wood filed an amended petition in which he raised the three claims exhausted in his state habeas application as well as several dozen unexhausted claims. The Supreme Court decided *Atkins v. Virginia* after the filing of Wood's original federal petition but before he filed his amended federal petition. 536 U.S. 304 (2002). However, Wood did not raise an *Atkins* claim in the amended petition, nor did he seek to amend the petition

a second time to include an *Atkins* claim. The district court denied each claim on the merits and subsequently denied a certificate of appealability (COA). *Wood v. Dretke*, [No. 3:01-CV-2103-L,] 2006 WL 1519969 (N.D. Tex. Jun. 2, 2006). Wood filed a notice of appeal and applied for a COA. A COA was denied and the Supreme Court denied certiorari on April 14, 2008. *Wood v. Quarterman*, 503 F.3d 408 (5th Cir. 2007); *Wood v. Quarterman*, 552 U.S. 1314 (2008).

Litigation complete, the state trial court scheduled Wood's execution for August 20, 2009. Two days before the scheduled execution Wood filed a subsequent application for writ of habeas corpus and a motion for stay of execution. Wood was granted a stay of execution so that he could raise an *Atkins* claim in the trial court. *Ex parte Wood*, No. WR-45,746-02, 2009 WL 10690712, at *1 (Tex. Crim. App. Aug. 19, 2009).

*DNA procedural background*

Eighteen years after his conviction and sentence, on November 1, 2010, David Wood filed his first motion for DNA testing pursuant to Chapter 64 of the Texas Code of Criminal Procedure. App.48.

Wood's *Atkins* claim was being litigated in the state district court and Wood asked the State to agree to DNA testing of evidence that was previously tested for purposes of Wood's trial. App.48. The State agreed, and the Court granted Wood's motion for DNA testing. App.48. Although Wood attempted to

stay the *Atkins* litigation until the DNA testing could be completed, the trial court held that both could proceed simultaneously. App.141. Wood asked the court to reconsider the stay while additional attorneys who had been appointed to represent him also asked for a ninety-day extension of *all* deadlines. App.162. The court refused to grant an indefinite stay but agreed to a ninety-day extension. App.163. However, the judge stated on the record that Wood was engaging in dilatory tactics and that Wood was seeking DNA testing for that purpose. *See* App.164, 477. The *Atkins* hearing was rescheduled for June 20, 2011, and Wood had until February 15, 2011, to turn over his expert reports. *See* App.164.

In early January 2011, the case was transferred from Judge Peca to Judge Bert Richardson. *See* App.318 Before Wood's February 15th deadline, Judge Richardson informed Wood's counsel that he would be willing to extend the deadline for turning over expert reports to some point shortly after an upcoming scheduling hearing. *See* App.318 On February 24, 2011, Wood filed a supplemental motion for DNA testing. App.149. Wood sought to test evidence that had not been previously tested: fingernails from the victim Angie Frausto. App.150. The State opposed this motion. App.156.

Wood continued to attempt to delay the *Atkins* case and repeatedly ignored deadlines to turn over his expert reports. *See* App.319, 477. During the week of August 8, 2011, the parties met in El Paso for a hearing to address the

results of the DNA testing and to set a hearing date for the *Atkins* claim. *See* App.319. At the August hearing, the parties agreed to begin the *Atkins* hearing on October 11, 2011. *See* App.319. Following the August hearing, Judge Richardson entered findings that the results of the DNA testing were not exculpatory. App.201.

On August 19, 2011, Wood informed the State that, despite his multiple extensions and missed deadlines, he would not be relying on any experts for the upcoming *Atkins* hearing. App.319. On October 11, 2011, four days before the *Atkins* hearing and over a month after the amendments to Chapter 64 went into effect, Wood filed a formal motion for DNA testing under Chapter 64 seeking to test more than sixty-nine items of evidence. App.202. The trial court agreed to appoint an expert, William Watson, to assist Wood in determining what evidence may be available for testing. App.476–80. Years passed without any word from Wood until the trial court announced that if no DNA issues were going to be pursued an execution date would be set. *See* App.500–01.

Following the court's admonition, Wood filed a hastily drafted two-page motion for DNA testing on April 3, 2015. App.513. The State filed an opposition to this motion on April 7, 2015. App.498. On April 30, 2015, Dr. Watson submitted a letter to the court stating that he had traveled to El Paso and reviewed the evidence. App.549. He then addressed which items of evidence he believed *might* contain biological material. App.550. The trial court did not

enter an order scheduling Wood's execution and on September 1, 2015, additional amendments to Chapter 64 went into effect.

On November 2, 2015, Wood filed a motion for the court to create a profile of an alternative suspect and a motion asking the court to unseal evidence pertaining to a body that was discovered in the desert east of El Paso during Wood's trial. App.588, 679.

At this point, a hearing on DNA issues was tentatively set for November 12, 2015, although it did not occur at that time. App.732. Regardless, Wood filed the motion less than two weeks before the tentative date, and seven months after the court's admonitions to Wood.

On December 11, 2015, the State filed its response to Wood's motion to create a DNA profile for an alternate suspect. App.730. The State filed an advisory on August 10, 2016, informing the court that the discovered body was that of a Hispanic male and was unrelated to the desert murders. App.809.

On August 19, 2016, Wood filed a "Motion to Compel Attorney General to Disclose Crime Stopper's Tip about Alternative Suspect." App.832. Next, on September 23, 2016, Wood filed a "Motion to Mitigate Harm Caused By State's Loss or Destruction of Potentially Exculpatory Biological Evidence." App.876. Wood then filed a "Motion to Compel State to Disclose Correspondence between State and Jailhouse Informant James Carl Sweeney." App.905. Finally, on January 31, 2017, Wood filed a "Motion to Compel Disclosure of *Brady* Material

Related to Police Misconduct." App.998. On February 8, 2017, the State filed a response to Wood's three motions to compel asserting that the court lacked jurisdiction to consider these motions. App.1147.

By this point, a hearing to address the DNA issues was scheduled for March 8, 2017. App.1300. On March 3, 2017—a mere five days before the hearing and approximately a year-and-a-half after Chapter 64 was amended—Wood submitted to the trial court a motion in excess of sixty pages for DNA testing under Chapter 64.[1] App.1156, 1217. In this motion, Wood asked the Court to test items of evidence that had never before been considered and that were not included in any of his other motions for DNA testing. App.1156–1215.

Then, after the hearing was held on March 8, 2017, on April 18, 2017, Wood filed a motion seeking to disqualify Judge Richardson from the case, claiming that the judge "tied his success in the election for a seat on the CCA to a particular outcome in David Wood's death penalty case." App.1245. The motion was filed more than two years after Judge Richardson was elected to the CCA and nearly four years after Judge Richardson found that Wood was not intellectually disabled. *See* App.1298. Presiding Judge Stephen Ables denied Wood's motion on June 12, 2017. App.1399. The CCA denied Wood's

---

[1]    The certificate of service indicates that the motion was electronically filed on March 3, 2017. App.1217. However, the motion was file stamped by the clerk's office on March 13, 2017. App.1156.

petition for leave to file a writ of mandamus on the issue on July 26, 2017. Notice, *In re Wood*, No. WR-45,746-03 (Tex. Crim. App. July 26, 2017).

Back in the trial court, on December 4, 2017, Wood filed a motion to disqualify the Attorney General's office as the District Attorney Pro Tem in this case. App.1400. On March 3, 2022, Judge Richardson denied Wood's motions for DNA testing, to mitigate harm, and to disqualify the Attorney General's office. App.1487–90, 1492.

On March 18, 2022, Wood filed another motion to disqualify the Attorney General's office as District Attorney Pro Tem. App.1494. Ten days later, Wood filed a motion to rescind the DNA order that was entered on March 3, 2022. App.1514. Wood wanted the trial court to rescind its orders to

> await the decision of the Court of Criminal Appeals on the petition for rehearing in *State v. Stephens*, -- S.W.3d --,2021 WL 5917198 (Tex. Crim. App. Dec. 15, 2021), before ruling on the State's Proposed Order Denying DNA Motions, the State's Proposed Execution Warrant, and the Defendant's Motion to Terminate Assistant Attorney General as Attorney Pro Tem.

App.1514.

The trial court did not act on Wood's motion. The CCA affirmed the trial court's denial on appeal. *Wood v. State*, 693 S.W.3d 308, 322–40 (Tex. Crim. App. 2024).

Plaintiff filed in this Court a civil-rights complaint. Defendant now moves to dismiss Plaintiff's Complaint.

## SUMMARY OF THE ARGUMENT

Plaintiff's DNA claims must be dismissed for lack of jurisdiction. The Court lacks jurisdiction because Plaintiff is simply attacking a state court's opinion rather than the State's postconviction DNA testing statutory scheme. Therefore, the complaint runs afoul of the *Rooker-Feldman*[2] doctrine and should be dismissed.

Plaintiff's DNA claims should also be dismissed for failure to state a claim upon which relief may be granted. The state court's postconviction DNA testing process provided by Texas Code of Criminal Procedure Article 64 (Chapter 64) does not violate fundamental fairness. As such, the complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6).

## ARGUMENT

## I.    The Standards of Review

### A.    Federal Rule of Civil Procedure 12(b)(1)

"It is incumbent on all federal courts to dismiss an action whenever it appears that subject matter jurisdiction is lacking." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks statutory or

---

[2]    *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415 (1923) (holding that the jurisdiction of the district court is strictly original; *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 476, 482 (1983) (holding a United States district court has not authority to review final judgments of a state court in judicial proceedings).

constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citation omitted). The party seeking to invoke jurisdiction bears the burden of demonstrating its existence. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). "[T]here is a presumption against subject matter jurisdiction that must be rebutted by the party bringing an action to federal court." *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996) (citation omitted). An action may be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) on any of three separate bases: (1) the complaint standing alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint, the undisputed facts, and the court's resolution of disputed facts. *Voluntary Purchasing Groups, Inc. v. Reilly*, 889 F.2d 1380, 1384 (5th Cir. 1989).

### B. Federal Rule of Civil Procedure 12(b)(6)

In analyzing a claim under Federal Rule of Civil Procedure 12(b)(6), the Court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004). However, "the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on

its face when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

"The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *In re Katrina*, 495 F.3d at 205 (quoting *Twombly*, 550 U.S. at 555). It is insufficient, then, to plead facts that are merely consistent with wrongful conduct; a plaintiff must instead plead facts that plausibly suggest that he or she is actually entitled to relief. *Twombly*, 550 U.S. at 556–57. Further, the pleading must contain something more than a recitation of facts that merely creates a suspicion of a legally cognizable right of action on the assumption that all the allegations in the complaint are true. *Id*. In challenging a state court's denial of relief from postconviction DNA testing, the plaintiff must demonstrate that "the postconviction relief procedures . . . were 'fundamentally inadequate to vindicate the substantive rights provided.'" *Harris v. Lykos*, 2013 WL 1223837, at *1 (5th Cir. 2013) (citing *District Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 69 (2009)).

14

## II.    Plaintiff Lacks Standing to Bring Suit Against Defendants Because His Requests for Relief Are, in Fact, a Mandamus Request Beyond this Court's Jurisdiction.

Plaintiff has not demonstrated standing with regard to his claims. "[B]efore a federal court can consider the merits of a legal claim, the person seeking to invoke jurisdiction must establish the requisite standing to sue." *Whitmore v. Arkansas*, 495 U.S. 149, 154–55 (1990). Standing requires: (1) that the plaintiff establish that he has suffered an "injury in fact"; (2) that there is a causal connection between the injury and the conduct complained of—the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court"; and (3) that it is "likely," as opposed to merely "speculative," the injury will be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). To establish the third prong of standing, a plaintiff must plead redressability—the injury complained of must be redressable by the relief sought. *Id*.

This Court lacks jurisdiction to grant the relief Plaintiff requests. Plaintiff states that he wants this court to issue "[a] declaratory judgment that Chapter 64, both facially and as applied to Mr. Wood, violates his due process rights." Compl., 23. However, Plaintiff does not adequately allege that the procedures provided in Chapter 64 are inadequate to protect his due process rights. Rather, the basis of Plaintiff's DNA claims is that the state courts erred

15

in their interpretation and application of state law. Comp. 16–22. That is, dissatisfied with the CCA's decision affirming the trial court's denial of relief, Plaintiff is essentially asking this Court to compel state officials to do what he believes the state court should have held those officials were required to do. Consequently, the bulk of the relief Plaintiff requests is not available to him because it "is in the nature of mandamus." *Norton v. Enns*, 2014 WL 3947158, at *3 (N.D. Tex. 2014). But federal courts "do not have jurisdiction to issue the writ against a state actor or agency." *Id*. (citing *Moye v. Clerk, Dekalb Cnty. Superior Court*, 474 F.2d 1275 (5th Cir. 1973)). "Instead, if relief is available to [Plaintiff], he must obtain it through a mandamus action or other appropriate action in the state courts." *Id*.

In *Swearingen v. Sharon Keller, et. al.*, the plaintiff filed a civil rights action alleging that a due process violation resulted from the CCA's inconsistent and arbitrary rulings during the postconviction DNA testing process and that the state courts had violated his constitutional rights by denying him his ability to establish his innocence. Order, No. A-16-CV-1181 (W.D. Tex. July 7, 2017). The district court held that it lacked jurisdiction because the plaintiff's complaint was "properly construed as a petition for mandamus relief." *Id*. The district court explained that the complaint was "the equivalent of a petition for mandamus relief because it request[ed]" the district court "to direct the state court to require the DNA testing [Swearingen]

16

requested and to direct the custodians of that evidence to release it for testing." *Id*. Plaintiff's DNA claims are materially indistinguishable from the requests at issue in *Swearingen*. *See also Ramirez v. McCraw*, 715 F. App'x 347, 350 (5th Cir. 2017). (finding the district court "accurately analyzed" the plaintiff's request for "an injunction requiring the defendants to release the biological material on which he asks for DNA testing" as tantamount to an impermissible writ of mandamus); *In re Moore*, 1990 WL 165776, at *1 (4th Cir. Nov. 1, 1990); *Davis v. Lansing*, 851 F.2d 72, 74 (2d Cir. 1988); *Mount v. Court of Criminal Appeals*, 2017 WL 6761860, at *2 (S.D. Tex. Nov. 20, 2017); *Pruett v. Choate*, 2017 WL 4277206, at *5 (S.D. Tex. Sept. 25, 2017).[3] Therefore, Plaintiff's DNA claims should be dismissed for lack of jurisdiction to the extent he asks for anything more than a declaratory judgment. Fed. R. Civ. P. 12(b)(1).

## III. Plaintiff's Claims Should Be Dismissed for Lack of Subject Matter Jurisdiction.

The Court should dismiss Plaintiff's claims because Plaintiff cannot establish subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The burden of establishing federal jurisdiction rests on the party seeking the federal forum.

---

[3]    The Fifth Circuit in *Pruett v. Choate* described as "well-taken" the district court's conclusion that the plaintiff's "due-process arguments seem[ed] to be dressed-up allegations that the TCCA should be directed to apply Texas law properly." 711 F. App'x  203, 206 n.9 (5th Cir. 2017). Moreover, the Fifth Circuit stated that the plaintiff's "complaint, stripped of a meritorious due-process claim, [could] rest on nothing but a petition for mandamus." *Id*. at 206 n.10.

*Stockman*, 138 F.3d at 151. For the reasons discussed below, Plaintiff has failed to satisfy his burden to establish subject matter jurisdiction.

### A. Defendant is entitled to Eleventh Amendment immunity to the extent Plaintiff seeks anything beyond declaratory and injunctive relief.

Plaintiff states that he is suing the Defendant in her official capacity. Compl., 3. However, the suit against Defendant is barred by Eleventh Amendment immunity.

The Eleventh Amendment bars a citizen from suing a state in federal court unless the state consents. U.S. Const. amend. XI; *Seminole Tribe v. Florida*, 517 U.S. 44, 54 (1996). Absent a waiver of immunity by the State or through federal statute, the Eleventh Amendment bars citizens from bringing suit against the states in federal court, regardless of the nature of the remedy sought. U.S. Const. amend. XI; *see, e.g.*, *Pennhurst State Sch. & Hosp. v. Haldeman*, 465 U.S. 89, 100–02 (1984); *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974). "Federal courts are without jurisdiction over suits against a state, a state agency, or a state official in his [or her] official capacity unless that state has waived its sovereign immunity or Congress has clearly abrogated it." *Moore v. La. Bd. of Elementary and Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014); *see Warnoch v. Pecos*, 88 F.3d 341, 343 (5th Cir. 1996).

An official capacity suit is to be treated as a suit against the entity. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). It is undisputed that the

Defendant is a state actor. *See* Tex. Const. art. 5, § 5; *Carty v. Tex. Dep't of Pub. Safety*, 2006 WL 3332589, at *4 (E.D. Tex. 2006). The Defendant has not waived sovereign immunity. As as a matter of law, Defendant (sued in her official capacity) has immunity under the Eleventh Amendment to the extent Plaintiff seeks anything other than a declaratory judgment or prospective injunctive relief. *See Cory v. White*, 457 U.S. 85, 89 (1982); *Moon v. City of El Paso*, 906 F.3d 352, 359–60 (5th Cir. 2018); *Vogt v. Board of Comm'rs, Orleans Levee Dist.*, 294 F.3d 684, 688 (5th Cir. 2002); *Martinez v. Tex. Dep't of Criminal Justice*, 300 F.3d 567, 574 (5th Cir. 2002).

### B. Plaintiff's DNA claims are barred by the *Rooker-Feldman* doctrine.

The *Rooker-Feldman* doctrine bars a federal court from entertaining collateral attacks on state court judgments. *United States v. Shepherd*, 23 F.3d 923, 924 (5th Cir. 1994). "If the district court is confronted with issues that are 'inextricably intertwined' with a state judgment, the court is 'in essence being called upon to review the state-court decision,' and the originality of the district court's jurisdiction precludes such a review." *Id.* (citing *Feldman*, 460 U.S. at 482 n.16). Thus, the *Rooker-Feldman* doctrine prohibits "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting

district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

Here, Plaintiff's claim related to the delay provision of Chapter 64 challenges the CCA's application of Article 64.03(a)(2)(B) to him.[4] *See* Compl., 16–22. ("The TCCA's application of a novel and unexpected construction of the statute violated due process because it inhibited Mr. Wood's ability to respond to the ultimate finding that he had not met Article 64.03(a)(2)(B)." Compl., 17). Therefore, his DNA claims regarding the postconviction DNA proceedings amount only to a collateral attack against the state court judgment. Such an attack is impermissible. *See Steph v. Scott*, 840 F.2d 267, 270 (5th Cir. 1988) (holding that a federal court cannot entertain a collateral attack on a state court judgment unless the state court lacked jurisdiction, or the state court lacked the capacity to act as a court).

Unlike in *Skinner v. Switzer*, Plaintiff does not attack the statute providing for postconviction DNA testing but the CCA's interpretation of it. 562 U.S. 521, 532 (2011) (holding the *Rooker-Feldman* doctrine did not bar

---

[4]      Wood lists only one claim in his complaint; however, the briefing presents two separate claims: 1) "The TCCA's construction of the statute violates due process because it renders DNA testing an illusion." Compl., 14; and 2) "The TCCA's construction of Article 64.03(a)(2)(B) violates due process because it construed the statute in a novel way that Mr. Wood did not have reasonable notice of when he sought DNA testing." Compl., 16.

plaintiff's constitutional challenge to Chapter 64).[5] Indeed, the Court in *Skinner* acknowledged that "a state-court decision is not reviewable by lower federal courts." *Id.* at 532–33. Here, Plaintiff's DNA claims take issue only with the CCA's decisions, not the adequacy of Chapter 64. Accordingly, Plaintiff's DNA claims are barred by the *Rooker-Feldman* doctrine and must be dismissed. *See Alvarez v. Attorney Gen. for Fla.*, 679 F.3d 1257, 1262–64 (11th Cir. 2012) (barring under the *Rooker-Feldman* doctrine a "procedural due process challenge [that] boil[ed] down to a claim that the state court judgment itself caused him constitutional injury by arbitrarily denying him access to the physical evidence he seeks"); *see also Wade v. Monroe County Dist. Att'y*, 2020 WL 639207, at *3–4 (3d Cir. Feb. 11, 2020); *Cooper v. Ramos*, 704 F.3d 772, 781 (9th Cir. 2012); *McKithen v. Brown*, 626 F.3d 143, 154–55 (2d Cir. 2010); *In re Smith*, 349 F. App'x 12, 14–15 (6th Cir. 2009).

As in *Alvarez*, Wood's claim with respect to the unreasonable-delay provision of Chapter 64 asks this Court to review the state court's judgment and the state court's application of state law *to him*. *Alvarez*, 679 F.3d at 1264. If Wood's claims succeed, the decision would "effectively nullify" the CCA's judgment to the extent that the CCA wrongly decided the issues. *Id.*; *see Cooper*

---

[5]    The plaintiff in *Skinner* "clarified the gist of" his claim—he did not challenge the CCA's decisions, but instead targeted Chapter 64 itself as unconstitutional. *Skinner*, 562 U.S. at 532.

*v. Ramos*, 704 F.3d 772, 780–81 (9th Cir. 2012) (distinguishing *Skinner* and holding that plaintiff's claims challenging the state court's denial of his request for DNA testing barred by the *Rooker-Feldman* doctrine because his complaint "explicitly attack[ed] both the prosecutor's conduct in his specific case and the state court's application in his specific case of the statutory factors governing entitlement to DNA testing"). Unlike in *Skinner* and *Reed v. Goertz*, 598 U.S. 230, 235 (2023), Wood's complaint does not assert that the delay provision of Chapter 64 is constitutionally inadequate as to any movant, but only as to himself. *See Cooper*, 704 F.3d at 780. Consequently, Wood's claim falls squarely within *Rooker-Feldman* and are subject to dismissal on that basis.

Wood is unable to identify any defect in Chapter 64's procedures. The only defect Wood identifies is the CCA's application of Chapter 64 to the facts in his case. This reveals that his complaint does not mount a facial challenge to Chapter 64 but instead only raises complaints about the CCA's decision in his case.

All Wood has to say about the *Rooker-Feldman* doctrine is the conclusory statement that he "does not challenge the adverse state-court decisions themselves, but rather targets as unconstitutional the Texas statute they authoritatively construed." Compl., 22. However, though Wood may say that he is not challenging the CCA's opinion in his case itself, his briefing belies that assertion. As demonstrated below, his argument directly attacks the

CCA's reasoning in his case, not Chapter 64. As such, Wood is prohibited from raising his claim in this forum.

Relatedly, to the extent Plaintiff requests a permanent stay of execution in the form of an injunction, his civil rights lawsuit is, in fact, more properly understood as being a successive habeas corpus petition over which this Court lacks jurisdiction. *See In re Pruett*, 784 F.3d 287, 290 (5th Cir. 2015) (plaintiff's § 1983 lawsuit challenging Chapter 64 was in fact a successive habeas petition because he was "essentially asking for an indefinite stay of execution based on nothing but speculation"). Moreover, to the extent Plaintiff might request an order from this Court directing the release of evidence for DNA testing, such relief is barred under *Rooker-Feldman* and would constitute an improper request for mandamus relief, which this Court lacks jurisdiction to provide. *See Ramirez*, 715 F. App'x at 350.

## IV.   Plaintiff's Amended Complaint Should Be Dismissed for Failure to State a Claim.

Even assuming this Court has jurisdiction to consider Plaintiff's complaint, his claims are subject to dismissal because they fail to state a claim for relief. Fed. R. Civ. P. 12(b)(6). As discussed below, Plaintiff's claims are barred by issue preclusion, not cognizable in a civil-rights action, and fail to state a facially plausible claim for relief. Therefore, his complaint should be dismissed.

**A.    Defendant Patton has absolute immunity from suit.**

Although Plaintiff asserts that he is suing District Attorney Pro Tem Patton in her official capacity and for declaratory relief and an injunction, Compl., 23, to the extent that he challenges Patton's actions as the District Attorney Pro Tem for El Paso County, Patton is entitled to absolute prosecutorial immunity. *See Moon*, 906 F.3d at 569–60; *Esteves v. Brock*, 106 F.3d 674, 677 (5th Cir. 1997). And to that extent, the claim fails as a matter of law and must be dismissed.

**B.    Plaintiff's due process claims are barred by the doctrine of issue preclusion.**

Issue preclusion, or collateral estoppel, is a doctrine designed to preclude relitigation of claims already decided. The elements of issue preclusion under federal law require the movant establish three conditions: (1) that the issue at stake is identical to the one involved in the prior litigation; (2) that the issue was actually litigated in the prior litigation; and (3) that the determination of the issue in the prior litigation was a critical and necessary part of the judgment in that earlier action. *Harvey Specialty & Supply, Inc. v. Anson Flowline Equip. Inc.*, 434 F.3d 320, 323 (5th Cir. 2005); *Hicks v. Quaker Oats Co.*, 662 F.2d 1158, 1166 (5th Cir. 1981).

Plaintiff alleges that he was denied due process during his most recent postconviction DNA proceedings in state court. Compl., 12–22. To the extent

these complaints were resolved adversely to Plaintiff by the CCA, *Wood v. State*, 693 S.W.3d 308 (Tex. Crim. App. 2024), relitigation of those complaints is impermissible. *See Moore v. Brown*, 295 F. App'x 176, 177–78 (9th Cir. 2005). Consequently, Plaintiff is precluded from collaterally attacking the CCA's decisions, and his DNA claims necessarily fail to state a claim for relief.

### C.    Plaintiff's DNA claims are patently meritless.

Chapter 64 requires that a movant prove that the request for DNA testing "is not made to unreasonably delay the execution of sentence or administration of justice." Tex. Code Crim. Proc. art. 64.03(a)(2)(B). The requirement that DNA testing "must have been diligently pursued" is similar to requirements imposed "by federal law and the law of other States, and they are not inconsistent with the 'traditions and conscience of our people' or with 'any recognized principle of fundamental fairness.'" *District Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 70 (2009) (quoting *Medina v. California*, 505 U.S. 437, 446, 448 (1992)). Indeed, the federal counterpart, the "model for how States ought to handle" enactment of postconviction DNA testing schemes, *id.* at 63, presumes untimeliness if the request is made five years after its enactment or three years after conviction, § 3600(a)(10)(B). Consequently, Plaintiff's central claim, challenging the state court's application of Chapter 64's unreasonable delay element to him, necessarily fails. *See Alvarez v. Attorney General of Fla.*, 679 F.3d 1257, 1266 n.2 (11th Cir.

2012) ("In short, inasmuch as Florida's DNA access procedures either mirror or are more applicant-friendly than the Alaska and federal statutes endorsed in *Osborne*, Florida's postconviction DNA access procedures plainly do not offend [due process]."); *Cunningham v. Dist. Attorney's Office for Escambia County*, 592 F.3d 1237, 1263 (11th Cir. 2010) ("Alabama's procedures pass muster if they compare favorably with Alaska's."); *McKithen v. Brown*, 626 F.3d 143, 153–54 (2d Cir. 2010) (holding that New York's statutory framework providing for DNA testing was adequate because its standards were less "restrictive and difficult to meet" than the Alaska standard at issue in *Osborne*). "Every court of appeals to have applied the *Osborne* test to a state's procedure for postconviction DNA testing has upheld the constitutionality of it." *Cromartie v. Shealy*, 941 F.3d 1244, 1252 (11th Cir. 2019).

Convicted individuals have no constitutional right to postconviction DNA testing, but if a state provides such a right, the procedures must satisfy due process. *Osborne*, 557 U.S. at 69, 72–74. However, a "criminal defendant proved guilty after a fair trial does not have the same liberty interests as a free man." *Id.* at 68. Thus, a state "has more flexibility in deciding what procedures are needed in the context of postconviction relief." *Id.* at 69. In order to demonstrate constitutional infirmity, a convicted individual must show that the postconviction procedures "are fundamentally inadequate to vindicate the substantive rights provided" such that the procedures "offend[] some principle

of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Id.* at 69–71. *Osborne* "left slim room for the prisoner to show that the governing state law denies him procedural due process." *Skinner v. Switzer*, 562 U.S. 521, 525 (2011). Neither of Plaintiff's claims demonstrate Chapter 64's procedures are fundamentally inadequate or offend any fundamental principle of justice. Therefore, the claims should be dismissed. Fed. R. Civ. P. 12(b)(6).

### D.  *Wood's Claims Are Meritless*

Wood claims that "facially and as applied to Mr. Wood, the TCCA's construction of Article 64.03(a)(2)(B) violates Mr. Wood's due process rights." Compl., 22. His claim is based on two allegations– 1) that the CCA's construction of Chapter 64 creates an "illusory" right; and 2) that the CCA construed Art. 64.03(a)(2)(B) in a novel way that violated his due process rights. Compl., 14, 16.

#### *Illusory*

Wood argues generally that the CCA's construction of Chapter 64 violates due process because it renders DNA testing an illusion. Compl., 14. Wood's legal and factual support for this allegation utterly fail. Indeed, the claim fails on its face because Wood's assertion that DNA testing under Chapter 64 is not based on any alleged defect in the statute. Rather, Wood complains generally that the CCA rarely grants DNA testing under Chapter

64. But without a showing that a particular provision of the statute is fundamentally inadequate or violates a fundamental principle of justice, Wood fails even to state a plausible claim for relief. *Osborne*, 557 U.S. at 69, 72–74.

Wood relies in large part on the Southern District's opinion in *Gutierrez v. Saenz*, 565 F. Supp. 3d 892, 908 (S.D. Brownsville Mar. 23, 2021). He argues that the "logic and legal rationale" found in the opinion "appl[ies] with full force to this scenario." Compl., 15. However, contrary to Wood's assertion, the district court decision in *Gutierrez* has no bearing on this case at all. First, it is based on an entirely different factual basis. *Gutierrez* focused on the fact that Chapter 64 does not cover requests for DNA testing to address punishment phase issues–a matter that is irrelevant here. Second, as Wood acknowledges in a footnote, the Fifth Circuit found that there was no standing and vacated the decision. Compl., 15 n.6. Indeed, the district court in *Gutierrez* has since dismissed the case with prejudice.[6] Order of Dismissal, *Gutierrez v. Saenz, et al.*, No. 1:19-CV-185 (S.D. Tex. June 18, 2024), ECF No. 216.

Wood provides factual support for this broad allegation by pointing out the frequency in which the CCA overturns DNA decisions. Compl., 15–16.

---

[6] Even if this Court considers the district court opinion in *Gutierrez* persuasive authority despite being vacated, that court rejected the claim that Chapter 64's materiality standard was so burdensome as to make testing an illusory right. *Gutierrez v. Saenz, et al.*, 565 F. Supp. 3d 892, 908–09 (S.D. Tex. 2021) ("Gutierrez has not shown it is impossible to receive DNA testing under Chapter 64.").

> That the TCCA has rendered Chapter 64 illusory based on the way
> it construes the statute is borne out by its decisions in DNA testing
> appeals. For the last 15 years, the TCCA has denied DNA testing
> in every appeal of a Chapter 64 motion in which Mr. Wood has
> been able to identify where it was requested.

Compl., 15.

This argument ignores the obvious fact that the CCA is not the only

Texas court that applies Chapter 64—trial courts and intermediate courts do,

too. Moreover, as an appellate court, the CCA has not "denied DNA testing."

Rather, the court affirms or rejects the trial court's ruling. Whether or not to

grant a motion for DNA testing is a question for the trial court not the CCA.

Therefore, even if it were proper to determine the constitutionality of Chapter

64 based solely on how often motions are granted, that evidence is not found

in an examination of appellate statistics. It suffices to say that Wood's claim

fails because inmates have not only obtained DNA testing but obtained relief

via Chapter 64. *See, e.g., Pruett v. State*, No. AP-77,065, 2017 WL 1245431, at

*5 (Tex. Crim. App. Apr. 5, 2017) (the trial court granted inmate's motion in

2015); *State v. Long*, Nos. 10-14-330-CR, 10-14-331-CR, 10-14-332-CR, 10-14-

333-CR, 2015 WL 2353017, at *1–4 (Tex. App.—Waco, May 14, 2015); *Wilson*

*v. State*, No. 74,390, 2003 WL 1821465, at *2 (Tex. Crim. App. Mar. 26, 2003)

("In fact, numerous trial courts have granted DNA testing for convicted

persons who satisfy the requirements of Articles 64.01 and 64.03."). This is

particularly true where Wood does not allege testing under Chapter 64 is

illusory because the CCA has interpreted the statute in a particular way. Compl., 12–16. Instead, he argues broadly that the CCA has not authorized testing under the statute. This utterly fails to show Chapter 64 on its face or as authoritatively construed by the CCA violates procedural due process.

In addition to improperly narrowing the inquiry to one court's decisions in Chapter 64 cases, Wood also erroneously focuses only on cases where the defendant has been sentenced to death. Compl., 15 n. 7, 16. Chapter 64 provides an avenue to seek post-conviction DNA testing to convicted persons beyond those under a death sentence. Therefore, in addition to the bulk of the DNA motions being resolved at the trial court level, a large number will be handled by intermediate courts without need for the CCA to weigh in. *See e.g., In re Robertson, Sr.,* 2021 WL 1312589 (Tex. App.—Austin 2021); *Evans v. State*, 628 S.W.3d 358 (Tex. App–Ft. Worth 2021); *Ambriati v. State,* 2015 WL 6998616 (Tex. App–Beaumont 2015). Chapter 64 appeals to the CCA are but one, relatively small, way in which convicted persons in Texas can avail themselves of the benefits of post-conviction DNA testing. Therefore, an examination of CCA opinions alone can never be sufficient to demonstrate that Chapter 64 is illusory.

Furthermore, there is no reason that Wood's selected timeframe has any practical relevance. In his discussion about the allegedly novel way the CCA construed Art. 64.03(a)(2)(B), Wood references cases outside the timeframe in

which the CCA decided in the movant's favor. Compl., 18. These cases demonstrate that the CCA does decide Chapter 64 appeals in the defendant's favor and that it is disingenuous to pick a random period of time and use that as proof that the CCA never rules in a certain way.

In fact, whether intentionally or unintentionally, Wood creates a false impression by using the past fifteen years as a basis for examining the frequency in which Chapter 64 motions succeed. Since 2013, the Texas Code of Criminal Procedure article 38.43 has required all biological evidence in death penalty cases to be DNA tested prior to trial. That would necessarily limit the postconviction testing requests during most of the 15-year period Wood discusses and skew any resulting statistics.

Finally, Wood's argument ignores those situations where the State agrees to post-conviction testing, as was done in this case with the items tested in 2010. App.48. *See e.g., Skinner v. State*, 665 S.W.3d 1, 10–16 (Tex. Crim. App. 2022) (summarizing Chapter 64 proceedings); Findings of Fact and Conclusions of Law, *Irvan v. State*, No. 864928 (180th Dist. Ct., Harris Co. Tex., Oct. 10, 2024) (trial court's order following agreed DNA testing). By definition, when there is an agreement between the parties, there is no appeal. Therefore, again, appellate statistics cannot represent how most DNA testing requests are resolved.

31

Even assuming the facts Wood alleges are true, at best. they create a suspicion of a legally cognizable right of action." *Twombly*, 550 U.S. at 556–57. Under *Osborne*, Wood must demonstrate that Texas' procedures "are fundamentally inadequate to vindicate the substantive rights provided" by Chapter 64. *Osborne,* 557 U.S. at 69–71. Wood's argument that the CCA's construction of Chapter 64 renders its benefits illusory entirely fails to do so. This claim should be dismissed.

### *Novel*

Although Wood acknowledges that the delay provision of Chapter 64 is permissible, he claims that the CCA interpreted the statute in such a novel way in his case so as to deny him due process. Compl., 16. Wood's claim fails to state a plausible claim for relief, and it should be dismissed. Fed. R. Civ. P. 12(b)(6).

Wood asserts that "[w]hile unreasonable delay provisions may in the abstract be permissible parts of state DNA testing statutes, the TCCA's construction of this provision violates due process." Compl., 16. The entire argument is based on Wood's assertion that, prior to his case, the CCA had definitively construed Chapter 64 in such a way that unreasonable delay only existed if the movant had an active execution date. However, Wood misreads the CCA's precedent.

Wood states that "if the individual seeking testing did not have an execution date (or was not on notice of the State's plan to seek one), particularly if other litigation remained pending, they were not found to have unreasonably delayed in seeking testing." Compl., 18. However, Wood was on notice of the State's plan to seek an execution date–Wood had previously had an execution date. The execution was stayed when the CCA authorized a subsequent habeas application to allow Wood to raise an *Atkins* claim. It was during the time that the *Atkins* claim was pending that Wood began his DNA testing motions. Wood continued filing amended motions after the *Atkins* claim was resolved. Specifically, Wood's April 3, 2015 motion was hastily filed after being told that the State was seeking a new execution date. *See* App.500–01. Furthermore, as the CCA noted, in 2019, although his *Atkins* claim had been resolved, Wood used his pending DNA requests to argue against the setting of an execution date. *Wood,* 693 S.W.3d at 336.

Additionally, as noted above, the fact that Chapter 64 is applicable to convictions beyond capital murder demonstrates the absurdity of an argument that the CCA had definitively construed the delay provision as hinging on the existence of an execution date. Such a theory would render every Chapter 64 motion in a non-death penalty case timely regardless of the actual facts of the case.

Wood also argues that "While in some instances the TCCA would use other factors in its justification for finding unreasonable delay, *plainly the presence of an execution date was the critical factor* in this determination. When no execution date was set or imminent, the *TCCA routinely would not even address the delay prong in death penalty cases."* Compl., 19.

Wood argues that the fact that the CCA did not discuss delay as an issue on appeal in a number of Chapter 64 cases as evidence that the separate fact that there was not an impending execution date is the sole reason delay was not addressed in the opinion. Compl., 19. This correlation does not establish causation. It cannot reasonably be argued that the CCA definitively construed article 64.03(a)(2)(B) by not mentioning it. The court decided the issues that it was presented with. *See e.g. Leal v. State,* 303 S.W.3d 292, 296 (Tex. Crim. App. 2009) ("Appellant states that the issue presented in his current appeal is whether he has established under Chapter 64 that he is entitled to have forensic testing performed on biological material introduced as evidence in his capital-murder trial.")

Wood's dilatoriness was an appropriate basis on which the CCA denied DNA testing, and Wood fails to prove that the timeliness requirement of Chapter 64 is fundamentally unfair. *Cf. Cromartie v. Shealy*, 941 F.3d 1244, 1256 (11th Cir. 2019) (finding that the due diligence requirement in Georgia's postconviction DNA testing scheme did not violate due process).

In *Reed v. State, the CCA* specifically listed possible factors to be used in determining whether unreasonable delay existed.[7] 541 S.W.3d 759, 778 (Tex. Crim. App. 2017). Consistent with its opinion in *Reed*, in Wood's case, the CCA discussed a number of factors that lead to the conclusion that Wood failed to demonstrate that his DNA request was not made for the purpose of delay–including the existence or anticipation of an execution date. *Wood*, 693 S.W.3d at 329–40. As the CCA noted, "[t]he statute 'does not contain set criteria a court must consider in deciding whether a movant satisfied his burden that his request is not made to unreasonably delay a sentence's execution,' but circumstances that may be considered include 'the promptness of the request, the temporal proximity between the request and the sentence's execution, or the ability to request the testing earlier. But cases will "turn on the discrete facts" they present and there is "no definitive criteria for answering this inherently fact-specific and subjective inquiry." *Id.* at 329 (quoting *Reed,* 541 S.W.3d at 778).

---

[7]     Wood appears to complain that because *Reed* was decided after Wood sought DNA testing he did not have notice that a determination of the delay provision required fact-based inquiry into factors beyond the existence of an execution date. Compl., 21. However, the *Reed* opinion cited to previous decisions thereby demonstrating that the principle was not a new one. *Reed,* 541 S.W.3d at 778. Additionally, the fact that the movant in *Reed* argued factors beyond the execution date is proof that it was understood that the delay provision required inquiry beyond that factor.

The CCA identified the piecemeal nature of Wood's litigation tactics as a factor in favor of finding unreasonable delay. Wood improperly narrows the CCA's analysis of this by describing the factor as "fil[ing] 'piecemeal' DNA motions." Compl., 12. The CCA described at great length the numerous pleadings beyond the four separate DNA motions Wood filed during the DNA proceedings. *Wood,* 693 S.W.3d at 329–40 (describing the four DNA motions, motions for extension, motions to recuse the trial court, motions to remove the District Attorney pro tem). However, the problem was not merely the number of pleadings, but the fact that Wood waited until the previous roadblock was finally cleared before filing his next questionably frivolous motion without regard for the fact that the motion should have been filed earlier. *Wood*, 693 S.W.3d at 338. The court stated,

> Even if the ancillary motions had all been legitimate in the abstract, Appellant doled many of them out one at a time to further delay the proceedings. And regardless of whether there was a procedural default, a number of the motions were clearly filed late.

*Id.*

Additionally, as the CCA identified, "the piecemeal litigation of ancillary motions that could have been filed earlier has continued even on appeal." *Id.* As examples of the piecemeal appellate litigation, the court pointed to the "ancillary motions [that] were clearly without merit" that the court was forced to deal with in its opinion–motions to remove Judge Richardson as trial judge,

motion to certify to the Governor to appoint a judge on appeal, motion to remove the Attorney General as District Attorney Pro Tem, "Motion to Mitigate Harm Caused by the State's Loss or Destruction of Potentially Exculpatory Biological Evidence." *Id.*

This discussion is consistent with the opinion in *Swearingen v. State*. 303 S.W.3d 728, 736 (Tex. Crim. App. 2010). In that case, the CCA established that the movant's actions beyond the mere filing of the Chapter 64 motion will be examined in determining whether the request was made for the purpose of delay. *Id.*

Wood's disagreement with the CCA's conclusion belies any assertion that he is making a facial attack on the constitutionality of Chapter 64's procedures. Instead, he merely disagrees with the CCA's fact-findings and its conclusion founded upon those facts, and the claim is jurisdictionally barred as discussed above. Furthermore, even if Wood could prove that he acted in a timely manner, it doesn't mean everyone seeking DNA testing has been diligent with their time. In other words, Wood fails to show that Chapter 64's timeliness requirement is unconstitutional in all situations, as is the required showing for a facial procedural due process claim. *See, e.g., Ams. for Prosperity Found. V. Bonta*, 594 U.S. 595, 615 (2021).

Even if we accept that Wood's factual allegations are accurate, they fail to "raise a right to relief above the speculative level." *In re Katrina*, 495 F.3d

at 205 (quoting *Twombly*, 550 U.S. at 555); *Burden v. Maness*, 2014 WL 4651609, at *2 (E.D. Tex. Sept. 17, 2014) (dismissing plaintiff's complaint for failing to state a claim because, "[w]hile plaintiff contends that the interpretation of Article 64.03 has led to an incorrect ruling in his case, he has not demonstrated that the procedures established by Article 64.03 are, in themselves, inadequate to protect a defendant's right to postconviction DNA testing"). Wood fails to sufficiently allege that Texas' procedures are inconsistent with fundamental fairness or "fundamentally inadequate to vindicate the substantive rights provided" by Chapter 64. *Osborne,* 557 U.S. at 69–71. Wood's argument that the CCA's application of Article 64.03(a)(2)(B) in his case deprived him of due process does not even challenge the Texas' procedures under Chapter 64. It is merely a complaint about how the CCA applied the law to the facts of his case. This claim should be dismissed.

## CONCLUSION

Plaintiff's complaint fails to establish that this Court has jurisdiction to consider it or that it alleges a claim for relief upon which relief can be granted. Therefore, Defendant respectfully requests that this Court dismiss the complaint.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JOSH RENO
Deputy Attorney General for
Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

<u>s/ Rachel L. Patton</u>
RACHEL L. PATTON
Assistant Attorney General
State Bar No. 24039030

Post Office Box 12548, Capitol Station
Austin, Texas 78711
Tel.: (512) 936-1400
Fax: (512) 320-8132
email:  *rachel.patton@oag.texas.gov*

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I do herby certify that on November 8, 2024, I electronically filed the foregoing document with the Clerk of the Court for the U.S. District Court, Western District of Texas, using the electronic case-filing system of the Court. The electronic case-filing system sent a "Notice of Electronic Filing" (NEF) to the following counsel of record, who consented in writing to accept the NEF as service of this document by electronic means:

Jeremy Schepers
Office of the Federal Public Defender Northern District of Texas
525 S. Griffin St., Ste. 629
Dallas, TX 75202
214-767-2746
214-767-2886 (fax)
jeremy_schepers@fd.org

Gregory W. Wiercioch
University of Wisconsin Law School 975 Bascom Mall
Madison, Wisconsin 53706
(Tel) 832-741-6203
(Fax) 608-263-3380
gregory.wiercioch@wisc.edu


s/ Rachel L. Patton
RACHEL L. PATTON
Assistant Attorney General