UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DAVID WOOD,<br>TDCJ No. 999051, | §<br>§<br>§ | |
| Plaintiff, | § | CIVIL NO. A-24-cv-01058-RP |
| | §<br>§ | |
| v. | §<br>§ | * CAPITAL CASE * |
| RACHEL PATTON,<br>Assistant Attorney General,<br>District Attorney Pro Tem, | §<br>§<br>§<br>§<br>§ | |
| Defendant. | § | |

## ORDER DISMISSING COMPLAINT

Plaintiff David Wood, a Texas death-row inmate, is scheduled to be executed on March 13, 2025. In September 2024, Wood filed a civil-rights complaint under 42 U.S.C. § 1983, arguing that the denial of his motion for DNA testing in state court denied him the right to due process of law. Wood later requested a preliminary injunction staying his execution to allow this Court more time to review the constitutional issues raised in his § 1983 complaint. Defendant Rachel Patton, sued in her official capacity as the District Attorney Pro Tem for El Paso County, Texas, opposes both requests.

Currently pending before the Court are Wood's Complaint (ECF No. 1), Defendant's Motion to Dismiss (ECF No. 10), Wood's Response (ECF No. 13), and Defendant's Reply (ECF No. 15). Also before the Court are Wood's Motion for Preliminary Injunction (ECF No. 16), Defendant's opposition (ECF No. 18), Wood's reply (ECF No. 19), and Wood's Motion for a Hearing (ECF No. 20). For the reasons discussed below, Defendant's Motion to Dismiss is granted and Wood's complaint dismissed for failing to state a claim upon which relief may be granted. Wood's motions for preliminary injunction and hearing are denied.

# I. Background

A. **The Offense**

During Wood's federal habeas corpus proceedings, the federal district court for the Northern District of Texas accurately summarized the evidence presented at Wood's 1992 capital murder trial:

> This case stems from the disappearances of six women from the El Paso, Texas area between May 13, 1987 and August 27, 1987. Between September 4, 1987 and March 14, 1988, the bodies of these women were found buried in shallow graves in the same desert area northeast of El Paso. Five of the bodies were located in the same one by one-half mile area; the sixth was three-quarters of a mile away. All of the bodies were approximately 30 to 40 yards from one of the dirt roadways in the desert. Four of the bodies were in various states of undress, indicating that the killer had sexually abused them. Five of the victims were seen by witnesses on the day of their disappearance accepting a ride from a man with either a red Harley-Davidson motorcycle or a beige pickup truck, matching the two vehicles owned by [Wood]. [Wood]'s girlfriend testified that he owned a burnt orange blanket and some shovels, all of which he kept in the back of his pickup truck. A forensic chemist later testified at trial that orange fibers found on the clothing of one of the victims matched orange fibers taken from a vacuum cleaner bag which [Wood] and his girlfriend had left in their old apartment.
>
> [Wood]'s cell mate, Randy Wells, testified that [Wood] told him about the murders, describing his victims as topless dancers or prostitutes. [Wood] told him that he would lure each girl into his pickup truck with an offer of drugs, drive out to the desert, tie her to his truck, and dig a grave. Next, he would tie the victim to a tree and rape her. Another cell mate, James Carl Sweeney, Jr., testified at [Wood]'s trial that Wood had shown him numerous clippings about the El Paso, Texas murders and had confessed to him that he was the one who had committed the murders.
>
> The testimony of Judith Kelly ("Kelly") regarding an extraneous criminal offense committed by [Wood] played a crucial role at the guilt phase of the trial and in the opinion of the Court of Criminal Appeals. Kelly, a prostitute and heroin addict, testified that in July 1987 she had been walking outside of a convenience store in the northeast part of El Paso when a man identified as Wood, and matching his description, asked if she needed a ride. She accepted his offer but Wood did not take her home as directed. Instead, he stopped at an apartment complex and went inside. When he returned, a piece of rope was hanging from one of his pockets. [Wood] drove northeast of town toward the desert, and after driving around the area for a period of time, stopped the truck, got out, and ordered Kelly out as well. She saw him get a "brownish red" blanket and shovel from the back of his truck. After tying her to the front of his truck with the rope,

2

> [Wood] proceeded to dig a hole behind some bushes. Ten or fifteen minutes later he returned with the blanket and began ripping her clothes and forcing her to the ground. Upon hearing voices, [Wood] ordered Kelly to get back in the truck. Wood drove to a different location in the desert where he stopped his truck again, ordered Kelly out, spread the blanket on the ground, and forced the victim to remove her clothes. He gagged her, tied her to a bush, and raped her. Immediately afterwards, [Wood] stated that he heard voices, and hastily threw his belongings back into the truck and drove away, leaving Kelly naked in the desert. His final words to her were, "[A]lways remember, I'm free."

*Wood v. Dretke*, No. 3:01-cv-2103-L, 2006 WL 1519969, at *1-2 (N.D. Tex. June 2, 2006).

**B.   Procedural History**

After hearing the evidence, a Dallas County jury convicted Wood of capital murder and answered the punishment questions in a manner that required the trial court to sentence Wood to death.[1] *State v. Wood*, No. 58486-171 (5th Crim. Dist. Ct., Dallas Cnty., Tex. Nov. 30, 1992). The Texas Court of Criminal Appeals (TCCA) affirmed Wood's conviction and sentence on direct appeal and later denied Wood's request for state habeas corpus relief. *Wood v. State*, No. 71,594 (Tex. Crim. App. Dec. 13, 1995); *Ex parte Wood*, No. 45,746-01 (Tex. Crim. App. Sept. 19, 2001). Wood was also unsuccessful in his pursuit of federal habeas corpus relief, which culminated in the Supreme Court's denial of his petition for certiorari review in April 2008. *See Wood v. Quarterman*, 502 F.3d 408 (5th Cir. 2007); *Wood v. Quarterman*, 552 U.S. 1314 (2008).

With post-conviction litigation ostensibly concluded, the state trial court scheduled Wood for execution on August 20, 2009. Two days before his scheduled execution, however, Wood filed a subsequent application for state habeas corpus relief raising a claim of intellectual disability under *Atkins v. Virginia*, 536 U.S. 304 (2002). The TCCA granted a stay of execution and remanded the application to the trial court for an evidentiary hearing. *Ex parte Wood*,

---

[1] Wood's trial was moved from El Paso County to Dallas County pursuant to a successful motion by the defense to change venue.

3

No. 45,746-02, 2009 WL 10690712 (Tex. Crim. App. Aug. 19, 2009). Following several years of litigation, the TCCA eventually denied Wood's subsequent application in November 2014. *Ex parte Wood*, No. 45,746-02, 2014 WL 6765490 (Tex. Crim. App. Nov. 26, 2014).[2]

### C.   **Wood's Requests for DNA Testing**

Since 2001, Chapter 64 of the Texas Code of Criminal Procedure has provided a process by which a convicted person may obtain forensic DNA testing of evidence if certain requirements are met. Acts 2001, 77th Leg., Ch. 2, § 2 (effective Apr. 5, 2001). Wood did not file his first motion for DNA testing until November 2010, when he sought testing of three items of evidence using techniques that were unavailable at the time of his trial. (ECF No. 1-2 at 48-93). The State did not oppose the motion, and the trial court granted it. *Id*. at 144-48. Upon conclusion of the testing, the trial court entered an order finding that the results did not establish a reasonable probability that Wood would not have been convicted had the results been available at trial. *Id*. at 201.

Following this first unopposed motion, Wood filed a series of opposed DNA motions over the next several years requesting testing on progressively more or different items.[3] Wood filed his second DNA motion, seeking testing of four additional fingernails, in February 2011. *Id*. at 149-52. His third motion, filed in October 2011, sought testing on more than 69 items that had not previously been subjected to DNA testing. *Id*. at 202-57. His fourth motion, filed over three years later in April 2015, identified an additional 39 items that should be tested. *Id*. at 513-17. In his fifth motion, filed November 2015, Wood requested testing on the hair, saliva, and

---

[2]   In light of the Supreme Court's decision in *Moore v. Texas*, 581 U.S. 1 (2017), the TCCA later granted reconsideration of Wood's subsequent application but again found that relief was unwarranted. *Ex parte Wood*, 568 S.W.3d 678 (Tex. Crim. App. Dec. 12, 2018).

[3]   During this time, Wood also filed a number of ancillary motions, including motions to disqualify the trial judge and to disqualify the assistant attorney general serving as counsel for the State. (ECF No. 1-3 at 341-79, 496-509, 590-99).

blood samples collected from an alternative suspect in order to create a DNA profile of that person. *Id*. at 588-612. And Wood's sixth motion, filed March 2017, sought testing on a total of 142 items, including items that were not mentioned in any of his previous DNA motions. (ECF No. 1-3 at 252-311).

After several hearings on the matter, the trial court ultimately denied Wood's requests for DNA testing in March 2022 without explanation. *Id*. at 610-11. On appeal, the TCCA affirmed the trial court's denial of DNA testing in an opinion delivered May 22, 2024. *Wood v. State*, 693 S.W.3d 308, 329-40 (Tex. Crim. App. 2024), *reh'g denied* (Aug. 21, 2024).[4] In its opinion, the court set forth an exhaustive timeline of the litigation history of the case before concluding that Wood "failed to show that his subsequent DNA testing requests have not been made to unreasonably delay the execution of sentence" as required by Chapter 64. *Id*. at 312; *see* Tex. Code Crim. Proc. Article 64.03(a)(2)(B). Among other things, the court cited Wood's delay in requesting DNA testing and the "piecemeal" nature of his numerous DNA and ancillary motions as evidence that he was purposefully attempting to delay the execution of his sentence "as long as possible." *Id*. at 337.

On August 15, 2024, the trial court entered an order setting Wood's execution date for March 13, 2025.

## II. Wood's Complaint

On September 9, 2024, Wood filed a civil-rights action under 42 U.S.C. § 1983 challenging the constitutionality of Chapter 64 as "authoritatively construed" by the TCCA. Wood raises two specific allegations in his complaint. First, citing the fact that the TCCA has

---

[4] Although Wood appealed this decision to the United States Supreme Court, he appealed only the TCCA's adjudication of a separate judicial-disqualification claim and not the court's ruling to affirm the denial of his DNA motions. His petition for writ of certiorari is currently pending. *See Wood v. Texas*, No. 24-6042 (2024).

denied DNA testing in every appeal of a Chapter 64 motion for the last 15 years, Wood argues that the TCCA's interpretation of Chapter 64 renders DNA testing an "illusory" right. Second, he contends that the TCCA's opinion in his case construed Chapter 64 in a "new and novel way" that he did not have notice of when he sought DNA testing.

Wood seeks the following relief: (1) a declaratory judgment from this Court stating that Chapter 64, both facially and as applied to Wood, violates the Constitution's guarantee of procedural due process, and (2) injunctive relief prohibiting his execution until Texas affords him a constitutionally adequate opportunity to seek DNA testing. He also asks this Court for a preliminary injunction to stay his upcoming execution date pending a resolution of this civil-rights action.

### III. Jurisdiction

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, a federal court must dismiss a case for lack of subject-matter jurisdiction "when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc., v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). Wood has filed a § 1983 complaint challenging the constitutionality of the Texas DNA statute—Chapter 64—as authoritatively construed by the state court. The Supreme Court has found that such challenges may be brought in a § 1983 action. *See Skinner v. Switzer*, 562 U.S. 521, 525 (2011) (holding "postconviction claim for DNA testing is properly pursued in a § 1983 action."). This is so because success in this civil-rights action, unlike a petition for habeas corpus relief, would not "necessarily imply" the invalidity of Wood's conviction. *Id*. at 534 (quoting *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005)). In fact, DNA testing could potentially prove inconclusive or may even further incriminate Wood. Because Wood's complaint would not "necessarily spell speedier release,"

6

his suit is properly brought under § 1983. *Young v. Gutierrez*, 895 F.3d 829, 831 (5th Cir. 2018) (citing *Skinner*, 562 U.S. at 534).

Nevertheless, Defendant requests dismissal of Wood's complaint under Rule 12(b)(1), arguing that this Court lacks subject-matter jurisdiction over the complaint because (1) Wood essentially seeks mandamus relief, (2) the Eleventh Amendment provides immunity, and (3) the *Rooker-Feldman* doctrine bars review. As discussed below, none of these arguments establish that this Court lacks subject-matter jurisdiction.

**A.    Standing**

Defendant first argues that Wood has not established standing with regard to his claims. If a party lacks Article III standing to pursue claims, a federal court lacks subject matter jurisdiction to adjudicate them. *See Abraugh v. Altimus*, 26 F.4th 298, 304 (5th Cir. 2022). To establish Article III standing, a plaintiff must prove that: (1) an "injury in fact" has occurred; (2) the injury can fairly be traced to the defendant's conduct; and (3) a favorable ruling will likely redress the injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

Defendant argues that Wood cannot establish the third prong of standing—redressability—because this Court lacks jurisdiction to grant the relief he requests. According to Defendant, the basis of Wood's complaint is that the state court erred in interpreting and applying Chapter 64, and, as such, Wood is essentially seeking an order to compel state officials to conduct DNA testing under the statute. It is well-established that federal courts lack the general power to issue writs of mandamus to direct state courts and their judicial officers in the performance of their duties where mandamus is the only relief sought. *Moye v. Clerk, Dekalb County Superior Court*, 474 F.2d 1275 (5th Cir. 1973).

Despite Defendant's argument to the contrary, Wood does not seek mandamus relief. Nowhere in his complaint did Wood ask this Court to find that the state court erred in its determination on the DNA motion or request an order compelling DNA testing. Rather, Wood is clear in the relief he requests: he seeks (1) "a declaratory judgment that Chapter 64, both facially and as applied to [him], violates his due process rights," and (2) " a preliminary and permanent injunction prohibiting [his] execution until Texas affords him a constitutionally adequate opportunity to seek DNA testing[.]" (ECF No. 1 at 24). Because Wood is pursuing a declaratory judgment against a state prosecutor that Chapter 64 "failed to provide procedural due process," and not an order compelling DNA testing, he does not lack standing to sue. *See Reed v. Goertz*, 598 U.S. 230, 234 (2023) (finding a favorable declaratory judgment in such circumstances would likely redress the injury because it "would eliminate the state prosecutor's justification for denying DNA testing.").

**B.      Eleventh Amendment Immunity**

Defendant next asserts that dismissal of Wood's complaint is warranted under the Eleventh Amendment. In most cases, Eleventh Amendment sovereign immunity bars suit against state officials in their official capacities. *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019). This principle is subject to several exceptions, however, including the doctrine created in *Ex parte Young*, 209 U.S. 123 (1908). The *Ex parte Young* doctrine allows suits for injunctive or declaratory relief against state officials in their official capacities for ongoing violations of federal law. *Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 471 (5th Cir. 2020) (en banc).

Defendant all but acknowledges this exception by arguing that immunity would only apply "to the extent [Wood] seeks anything beyond declaratory and injunctive relief." (ECF

No. 10 at 25). Yet, as mentioned previously, Wood's complaint seeks *only* declaratory and injunctive relief. (ECF No. 1 at 24). The Eleventh Amendment is therefore inapplicable. *See Reed*, 598 U.S. at 234 (holding the *Ex parte Young* doctrine "allows suits like Reed's for declaratory or injunctive relief against state officers in their official capacities.").

## C.  The *Rooker-Feldman* Doctrine

Lastly, Defendant requests dismissal of Wood's complaint under what is known as the *Rooker-Feldman* doctrine.[5] The doctrine is a jurisdictional rule that precludes federal courts from adjudicating cases brought by state-court losing parties challenging state-court judgments. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291-92 (2005). Under this doctrine, Wood is barred from making a direct challenge in federal court to the state court's denial of DNA testing under Chapter 64. *Gutierrez v. Saenz*, 93 F.4th 267, 271 (5th Cir. 2024), *cert. granted,* 145 S. Ct. 118 (2024).

Although Wood is barred in federal court from making a direct challenge to the state court's decision, "he may make a facial challenge to the statutes, rules, and interpretations on which the denial was based." *Id*. (citing *Truong v. Bank of Am., N.A.*, 717 F.3d 377, 382 (5th Cir. 2013)). Here, Wood's complaint specifically asserts that "[t]he TCCA's authoritative construction of Chapter 64 violated [his] due process rights." (ECF No. 1 at 2). Because Wood is not challenging the adverse state-court decision itself but rather the validity of the Texas DNA statute it authoritatively construed, the *Rooker-Feldman* doctrine is inapplicable. *Reed*, 598 U.S. at 235 (finding *Rooker-Feldman* inapplicable to Reed's challenge to Chapter 64 because he does "not challenge the adverse" state-court decisions themselves, but rather "targets as

---

[5] The *Rooker-Feldman* doctrine derives from *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

unconstitutional the Texas statute they authoritatively construed.") (citing *Skinner* 562 U.S. at 532). As such, this Court does not lack subject-matter jurisdiction.

### IV. Standard of Review

Defendant also requests a dismissal of Wood's complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. A prisoner's civil-rights complaint should be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915A(b)(1); Fed. R. Civ. P. 12(b)(6). Under this standard, the complaint must be liberally construed in favor of the plaintiff and all facts pleaded in the complaint must be taken as true. *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009). A reviewing court must therefore consider whether, "with every doubt resolved on [the plaintiff's] behalf, the complaint states any valid claim for relief." *Id*.

Although a complaint does not need detailed factual allegations, a plaintiff must allege sufficient facts to show more than a speculative right to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To withstand dismissal for failure to state a claim, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on its face when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678-79. This plausibility standard is not simply a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id*. Thus, a district court's dismissal of a complaint for failing to state a claim will be upheld if, "taking the plaintiff's allegations as true, it appears that no relief could be granted based on the plaintiff's alleged facts." *Samford v. Dretke*, 562 F.3d 674, 678 (5th Cir. 2009).

## V. <u>Analysis</u>

Defendant moves to dismiss Wood's § 1983 complaint for failing to state a claim upon which relief may be granted. To state a claim under § 1983, a plaintiff must prove that: (1) the conduct in question was committed by a person acting under the color of state law, and (2) the conduct deprived the claimant of a constitutional right. *Kovacic v. Villarreal*, 628 F.3d 209, 213 (5th Cir. 2010). While there is no freestanding constitutional right for a convicted defendant to obtain evidence for post-conviction DNA testing, Texas has created such a right. *See* Tex. Code. Crim. Pro. art. 64.03.[6] As a result, the state-provided procedures must be adequate to protect the substantive rights provided. *Skinner*, 562 U.S. at 525; *Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 69 (2009).

In order for these procedures to be unconstitutional, it would have to be determined that the procedures were "fundamentally inadequate" to protect Wood's right to seek post-conviction DNA testing, offending "some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Osborne*, 557 U.S. at 69. This is a difficult standard to meet, and leaves "slim room for the prisoner to show that the governing state law denies him procedural due process." *Cromartie v. Shealy*, 941 F.3d 1244, 1252 (11th Cir. 2019) (citing *Skinner*, 562 U.S. at 525).[7] Wood does not meet this demanding standard.

---

[6] Article 64.03(a) allows for post-conviction DNA testing of evidence if the state trial court finds: "(1) the unaltered evidence is available for testing; (2) identity was an issue in the case; (3) the convicted person establishes by a preponderance of the evidence that he would not have been convicted if DNA testing provided exculpatory results; and (4) the motion is not made to delay the execution of a sentence." *See Emerson v. Thaler*, 544 F. App'x 325, 328 (5th Cir. 2013) (unpublished).

[7] Indeed, as far as this Court is aware, every court of appeals to have applied the *Osborne* test to a state's procedure for post-conviction DNA testing has upheld the constitutionality of it. *See*, *e.g.*, *Cromartie*, 941 F.3d at 1256 (upholding Georgia's postconviction DNA testing scheme); *Morrison v. Peterson*, 809 F.3d 1059, 1067-69 (9th Cir. 2015) (holding California's procedure constitutional); *Alvarez v. Att'y Gen.*, 679 F.3d 1257, 1266, n.2 (11th Cir. 2012) (Florida); *McKithen v. Brown*, 626 F.3d 143, 152 (2d Cir. 2010) (New York); *Tevlin v. Spencer*, 621 F.3d 59, 71 (1st Cir. 2010) (Massachusetts); *Cunningham v. Dist. Attorney's Office*, 592 F.3d 1237, 1261 (11th Cir. 2010) (Alabama).

The DNA statute at issue in this case—Chapter 64 of the Texas Code of Criminal Procedure—permits a convicted defendant to move in the convicting court for post-conviction DNA testing of evidence. But the statute only allows the state court to order testing if the applicant can establish, by a preponderance of evidence, that "the request for the proposed DNA testing is not made to unreasonably delay the execution of sentence or administration of justice." Tex. Code Crim. Proc. art. 64.03(a)(2)(B). The TCCA affirmed the denial of Wood's DNA motion because he could not establish this requirement, discussing in great detail "a course of conduct designed to draw out DNA proceedings to try to delay [Wood]'s execution as long as possible." *Wood*, 693 S.W.3d at 337.

Wood first argues that the TCCA's authoritative construction of Chapter 64 violates due process because it renders DNA testing an illusory right that cannot be reasonably obtained. Wood bases this facial challenge on the fact that the TCCA has affirmed the denial of DNA testing in every appeal presented to it in the last fifteen years, some twenty-three consecutive cases. Even assuming these facts to be true, Wood's argument is unpersuasive because it looks only at one aspect of the State's DNA procedures (the appeal of a trial court's denial of DNA testing to the State's highest court) rather than the entire process as a whole. While examining TCCA's decisions in such cases is undoubtedly an important part of evaluating the adequacy of the State's process, at best it demonstrates the difficulty of overturning a trial court's denial of testing on appeal. It does not demonstrate that it is impossible to obtain DNA testing under Chapter 64 or that Chapter 64 is an illusory right. Because there is nothing so egregious about Texas's DNA statute as a whole, or the TCCA's application thereof, no due process violation has been shown.

Wood's second argument that the TCCA construed the "unreasonable delay" prong of Chapter 64 in a "new and novel way" is similarly unavailing. According to Wood, the TCCA had previously found unreasonable delay only in cases where an individual sought DNA testing with an execution date pending. Wood complains that, based on this history, he was denied notice that unreasonable delay could be found in his case when no execution date had been set. Yet, neither the cases cited by Wood nor Chapter 64 itself demonstrate that the presence or absence of an execution date is a critical factor that trial courts must consider in determining whether a motion for DNA testing was made to unreasonably delay a sentence. *See Reed v. State*, 541 S.W.3d 759, 778 (Tex. Crim. App. 2017) (stating "Article 64.03(a)(2)(B) does not contain set criteria a court must consider" in making this determination). Instead, such determinations are an "inherently fact-specific and subjective inquiry" for which there is no "definitive criteria." *Id*.

Regardless, the Supreme Court has already held that a similar legal framework is constitutionally adequate to protect an applicant's due process rights. *Osborne*, 557 U.S. at 69-70. In *Osborne*, the state law at issue required a showing that the requested DNA evidence was newly available, *diligently pursued*, and sufficiently material. *Id*. at 70. The Court found that those procedures "are similar to those provided for DNA evidence by federal law and the law of other States [] and they are not inconsistent with the 'traditions and conscience of our people' or with 'any recognized principle of fundamental fairness.'" *Id*.[8]

This Court sees no constitutionally relevant distinction between what was approved in *Osborne*—requiring an applicant to show he acted with due diligence before DNA testing will be

---

[8] In fact, the federal counterpart presumes untimeliness if the request is made five years after its enactment or three years after conviction, or if the applicant's filing is done "solely to cause delay or harass." 18 U.S.C. § 3600(a)(10)(A).

13

allowed—and requiring an inmate to show, by a preponderance of the evidence, that the proposed testing was not made for purposes of "unreasonable delay." Tex. Code Crim. Proc. art. 64.03(a)(2)(B). Thus, Wood has not shown that Chapter 64, as a whole, was "fundamentally inadequate" to protect his right to seek post-conviction DNA testing.

In summary, after careful consideration, the Court is unable to find any failure of Texas's post-conviction procedures that "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental" or that "transgress[es] any recognized principle of fundamental fairness in operation." *Moon v. City of El Paso*, 906 F.3d 352, 359 (5th Cir. 2018) (citing *Osborne*, 557 U.S. at 69). Considering he fully utilized the processes enacted by the state legislature to obtain DNA testing, all Wood has shown is that he disagrees with the state court's interpretation of Texas law. That is not enough. There is simply "nothing inadequate about the procedures [Texas] has provided to vindicate its state right to postconviction relief in general," much less anything "inadequate about how those procedures apply to those who seek access to DNA evidence." *Osborne*, 557 U.S at 70; *see also Pruett v. Choate*, 711 F. App'x 203, 206-07 (5th Cir. 2017) (unpublished) (finding plaintiff's assertions regarding TCCA's interpretation of Chapter 64 "boil down to the bare claim that the [TCCA] misapplied Texas law" and not a due-process violation). In other words, Wood fails to establish that Chapter 64, as construed by the TCCA, denies him procedural due process. *Skinner*, 562 U.S. at 525.

### VI.  Motion for Preliminary Injunction

Wood asks this Court for a preliminary injunction to stay his upcoming execution, allowing for more time to review the claims raised in his complaint. To obtain a preliminary injunction, Wood must establish: "(1) a substantial likelihood of success on the merits, (2) a

substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest." *Jones v. Tex. Dep't of Criminal Justice*, 880 F.3d 756, 759 (5th Cir. 2018) (quoting *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009)); *Ladd v. Livingston*, 777 F.3d 286, 288 (5th Cir. 2015) (citing *Trottie v. Livingston*, 766 F.3d 450, 451 (5th Cir. 2014)). This standard is essentially the same as the framework for deciding whether to grant a stay of execution. *See Adams v. Thaler*, 679 F.3d 312, 318 (5th Cir. 2012) (reiterating the four prerequisites for obtaining a stay of execution as set forth in *Nken v. Holder*, 556 U.S. 418, 434 (2009)).

These factors do not support Wood's request for an injunction.[9] In particular, Wood fails to show a likelihood of success on the merits. Of the stay-of-execution factors, the likelihood of success is often "the most critical." *Nken*, 556 U.S. at 434. Though the movant in a capital case "need not always show a probability of success on the merits, he must present a substantial case on the merits when a serious legal question is involved and show that the balance of equities [i.e. the other three factors] weighs heavily in favor of granting the stay." *Celestine v. Butler*, 823 F.2d 74, 77 (5th Cir. 1987).

Here, Wood requests a stay of execution so that the Court may consider further the issues raised in his complaint: namely, whether Chapter 64, as interpreted by the TCCA, violates Wood's due process rights under the United States Constitution. Because the Court rejects Wood's allegations that the TCCA rendered Chapter 64 an "illusory" right or interpreted

---

[9] The Court notes that, in a capital case, the second *Nken* factor—the possibility of irreparable injury—"weighs heavily in the movant's favor." *O'Bryan v. Estelle*, 691 F.2d 706, 708 (5th Cir. 1982) (per curiam). But an applicant is not entitled to a stay "[as] a matter of right, even if irreparable injury might otherwise result to the appellant." *Nken*, 556 U.S. at 427 (internal quotation marks omitted). Although the death penalty is irreversible, there must come a time when the legal issues "have been sufficiently litigated and re-litigated so that the law must be allowed to run its course." *O'Bryan*, 691 F.2d at 708 (quoting *Evans v. Bennett*, 440 U.S. 1301, 1306 (1979)).

Chapter 64 in a "novel" fashion, he cannot demonstrate a likelihood of success on the merits. *See Diaz v. Stephens*, 731 F.3d 370, 379 (5th Cir. 2013) (affirming denial of stay when movant fails to establish likelihood of success on the merits). Wood thus fails to meet his burden under the first *Nken* factor.

Wood's "inability to establish a likelihood of success on the merits is, effectively, dispositive of the motion for stay." *Crutsinger v. Davis,* 930 F.3d 705, 707 (5th Cir. 2019). The Court, however, notes that the final two *Nken* factors also weigh against him.

With regard to the third and fourth *Nken* factors, the interests of the State and the public in enforcing valid criminal sentences outweigh Wood's request for more time. *Bucklew v. Precythe*, 587 U.S. 119, 149 (2019) (explaining that "both the State and the victims of crime have an important interest in the timely enforcement of a [death] sentence."); *United States v. Vialva*, 976 F.3d 458, 462 (5th Cir. 2020) (finding the public has an interest "in timely enforcement of the death sentence."). Granting Wood a stay at this late juncture would clearly inhibit the State's vested interest in carrying out an otherwise valid sentence and would impair the finality of the state court's criminal judgment. When "lengthy federal proceedings have run their course"—as they have in this case—"finality acquires an added moral dimension." *In re Fed. Bureau of Prisons' Execution Protocol Cases*, 955 F.3d 106, 126 (D.C. Cir. 2020) (citing *Calderon v. Thompson*, 523 U.S. 538, 556 (1998)). Accordingly, three of the four *Nken* factors weigh against granting Wood's request to stay his execution.

The Court therefore denies his motion for a preliminary injunction.

## VII.  Conclusion and Order

Contrary to arguments made by Defendant, neither the nature of Wood's request, the Eleventh Amendment, nor the *Rooker-Feldman* doctrine divest this Court of subject-matter

jurisdiction over Wood's complaint. However, Wood's complaint fails to state a claim upon which relief may be granted because there is nothing inadequate about how Chapter 64's procedures apply to those who seek access to DNA evidence. *See* 28 U.S.C. § 1915A(b)(1); Fed. R. Civ. P. 12(b)(6).

Accordingly, based on the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion to Dismiss, filed November 8, 2024 (ECF No. 10), is **GRANTED**;

2. Wood's Complaint seeking declaratory and injunctive relief, filed September 9, 2024 (ECF No. 1), is **DISMISSED WITH PREJUDICE** for failing to state a claim upon which relief may be granted;

3. Wood's Motion for Preliminary Injunction, filed January 23, 2025 (ECF No. 16), is **DENIED**; and

4. Wood's Motion Requesting a Hearing on His Motion for Preliminary Injunction, filed February 14, 2025 (ECF No. 20), is also **DENIED**.

It is so **ORDERED**.

**SIGNED this the 19th day of February, 2025.**

                        **ROBERT PITMAN**
                        **UNITED STATES DISTRICT JUDGE**